## FRENCH & AL. *vs.* CHASE.

The prior right of a partnership creditor, to be paid out of the common property, in preference to a separate creditor of either of the partners, does not exist in the case of a dormant partnership. In such case a creditor whose debt relates to the business of the firm, and who is behind the creditors or vendees of the ostensible partner in his attachment, shall not be permitted to defeat them and gain a priority, because he has discovered the concealed liability of a secret partner.

REPLEVIN of certain merchandize. The defendant pleaded property in one *Walter Brown* and one *Nathaniel E. Quinby*; and that he, as a deputy sheriff, attached the goods by virtue of a writ against them; traversing the property of the plaintiffs; upon which issue was joined.

At the trial of this issue, before *Weston J.* it appeared that the writ, by virtue of which the goods were attached, was issued against *Brown & Quinby*, upon a note signed by the latter alone, with an averment that *Brown* was his partner. There had never been any open and avowed partnership between them; and the greater part of the goods had been purchased in the name, and on the sole credit of *Quinby*, who had done business in his own name at *Frankfort*; but from certain appearances and declarations it was generally believed there that *Brown* was connected with him; and once an advertisement was posted upon the store there, announcing a dissolution of the partnership between them.

Afterwards a store was opened at *Brewer*, in the name of *Brown*; but from the agency of *Quinby* in the business of the store, and from the fact that the greater part of the goods had been purchased on his credit, it was still believed that they were connected in business.

Early in *January*, *Brown* removed the goods from *Brewer* to *Milo*, where he transacted business in his own name, without the presence or apparent assistance of *Quinby*; and having sold off a considerable portion of the goods, he replenished his stock in the following *April*.  How these last goods were obtained, did not appear. In *July* ensuing, the goods then in store where attached by one *Kitteridge*, for payment of a note of about 600 dollars, made by *Quinby* alone, upon the assumption that *Brown* was his partner. Hereupon *Brown*, by three bills of sale, conveyed to the plaintiffs the goods in store, with some corn, grain, and other articles, amounting in all to $1054 93; in consideration whereof the plaintiffs assumed, and afterwards paid, the debt due to *Kitteridge*, gave up a note of about $230 due from *Brown* to them, but not yet payable, and gave him their own promissory note for upwards of 200 dollars for the balance.  How the note thus given up accrued, did not appear.  It appeared, however, from the testimony of one of the plaintiffs' witnesses, that in his opinion the goods conveyed to them would not have produced, at a sheriff's sale, more than enough to have paid the debt due to *Kitteridge*.

There was evidence tending to show that *Quinby* meditated a fraud upon his creditors, with the privity and participation of *Brown*; and whether the plaintiffs also were implicated in the transaction, was left to the jury to determine.

Upon this evidence the counsel for the defendant requested the judge to instruct the jury that the purchase of the property by the plaintiffs, with a view to secure their debt against *Brown*, giving a note to him alone for the balance, whereby the joint creditors of *Brown & Quinby* might be prevented from attaching the same property, was illegal and void as against such creditors.  This the judge declined; but he did instruct them that though the plaintiffs might know that the creditors of *Brown & Quinby* might be thus defeated, yet as the business was done in *Brown's* name, he alone being ostensibly concerned therein, they had a right to deal with him individually; and that if the transaction was conducted with good faith on their part, though the creditors of *Brown & Quinby* might thereby be defeated, and this consequence foreseen by the

plaintiffs, yet their title to the property would remain unaffected. But that if the fraud meditated by *Brown & Quinby*, if such there was, upon their creditors, was known to the plaintiffs, and there was sufficient reason, from the evidence, to believe that there was mingled, with other motives of the plaintiffs, any intention to aid in this design, it would vitiate and defeat their title, and the verdict of the jury must, in that case, be for the defendant. But they found for the plaintiffs. And if the instruction requested ought to have been given, or if that which was given was erroneous, was reserved for the consideration of the court.

. *J. McGaw* and *Sprague*, for the defendant, said that this was not a case of dormant partnership, so far as the plaintiffs were concerned, because they well knew the fact of the partnership ; and also of its insolvency ; and that there was no surplus property, to which either partner could be separately entitled. It was therefore a question whether one of the partners could apply the goods of the firm to the payment of his own private debt, to the exclusion of the partnership creditors. And this they denied. 5 *Pick.* 11.

*Allen, Hill & Starrett,* for the plaintiffs.

The substance of the following opinion was given by the Court in the county of *Waldo* at the ensuing *July* term ; after which it was drawn up by

MELLEN C. J. The plaintiffs claim title to the goods in question under a sale of them by *Walter Brown.* The report states that they paid a fair and valuable consideration for them ; and the jury, under the instructions they received, have found that the transactions which terminated in the sale, were conducted on the part of the plaintiffs in good faith. Though it does not distinctly appear that *Brown & Quinby* were partners in trade at any time, yet a connection of that kind is alluded to in the report ; and in the argument it was admitted ; and also that the firm was insolvent. The partnership, however, was a secret one ; and at one time the business was carried on in the name of *Quinby* ; and afterwards in the name

French & al. *v.* Chase.

of *Brown ;* *Quinby* then not having any apparent agency or interest in it. Such was the case at the time the plaintiffs made the purchase ; but there is no evidence when the note was given by *Brown* to the plaintiffs, or the note by *Quinby* to the attaching creditor. In both cases the notes were signed in the usual manner, each with the individual name of the promissor. Upon these facts we are to decide whether the requested instructions were properly refused, and whether those which were given were correct. Both questions may be considered at the same time ; for whatever is a legal answer to one, is equally so to the other ; if the instructions given were correct, those refused would have been incorrect.

The defendant contends that he has a right to the goods by virtue of the attachment, superior to that of the plaintiffs under the sale, on the ground that the note in suit was given for a partnership debt, though signed only with the name of *Quinby;* and he relies on the well known principle that the partnership funds must first be applied to the payment of partnership debts ; and that until such debts are satisfied, a creditor of one of the firm cannot appropriate any portion of them. But the question here is, whether this principle is applicable in the present case, where *Brown* alone was the ostensible owner, and the existence of any partnership was wholly unknown to the plaintiffs. To extend the principle thus far would be unreasonable and unjust, and farther, we apprehend, than it has ever been carried by any judicial decision. The reason upon which the doctrine is founded, cannot exist where the business of a secret partnership is all transacted by and in the name of one of the partners, who appears to all the world as the sole owner. Persons contracting with him, look, and have a right to look, to the property as well as the ability of the person in such cases for the security of their debts ; and there is nothing in the case, as presented to us, which shews that the plaintiffs and the attaching creditor did not both reason, calculate and act upon the same principle at the time they received their respective notes. They must therefore both be considered as standing on the same ground, contracting under the same circumstances, and entitled to the same rights as creditors. Both looked to the visible funds of the person with whom they respectively dealt ; and as the plain-

22

tiffs, if they had attached the goods in question prior to the attach-
ment by the defendant, would have been entitled to hold them, for
the same reason they are entitled to hold them under and in virtue
of the sale by *Brown* to them ; they being fair and honest purcha-
sers, having paid a full consideration in the manner mentioned in
the report. In this view of the cause, and laying out of the case the
attaching creditors' supposed priority of right, it is clear that the
plaintiffs had an unquestionable right to secure their demand by
means of the purchase of the goods, although the creditors of the
firm might thereby be defeated, and such consequences have been
foreseen. They gave up to *Brown* his note for about $230—gave
their own note for about $600 to secure the *Kitteridge* demand,
which they had paid before the trial, and also a note to *Brown* for
the balance ; amounting in all to $1030, for the goods in question,
estimated at 1054 93 ; though there was proof that they would
not, in the opinion of the witness, have produced, if sold on execu-
tion, more than sufficient to have paid the *Kitteridge* debt of $600
and costs. The principle above stated is distinctly maintained by
the decision in *Bartels v. Harris,* 4 *Greenl.* 146, and *How v. Ward,*
*ib.* 195. We are all of the opinion that the decisions of the judge,
in relation to the subject of instructions to the jury, were correct.

Since the last term in the county of *Waldo,* when the opinion
formed by the court in this case was made known, and before it was
drawn up, the case of *Lord v. Baldwin,* 6 *Pick.* 348, has been seen
and examined by us ; in which it was decided that in case of a dor-
mant partnership, an attachment of the stock in trade in the hands
of the ostensible partner, in a suit against him alone, has preference
before a subsequent attachment of the same goods by another per-
son in an action against the partners. The principles upon which
that decision is founded apply with equal propriety and force in the
case at bar as in that, though the plaintiffs claim in virtue of a prior
sale of the goods, and not of a prior attachment. The Chief Jus-
tice, in delivering the opinion of the court says, " the basis upon
which the rule rests, is, that the funds shall be liable upon which
the credit was given. Those who sell goods to, or make a contract
with a company or firm, are supposed to trust to the ability or prop-

erty of the firm. Those who trust the individual member, rely on his sufficiency alone." Where all the creditors have trusted the man of business and apparent owner of goods, one of such creditors, who is behind the rest in his attachment, shall not be permitted to supplant them and gain a priority, because he has discovered the concealed liability of a secret partner.

*Judgment on the verdict.*